The next matter, number 21-1414, LaShawn Casey versus the United States. At this time, would Counsel for Appellant Casey please introduce herself on the record. My name is Virginia Villa and I represent LaShawn Casey, who is the appellant in this matter. I would ask leave to reserve five minutes for rebuttal, Your Honor. You may have three minutes. Thank you. This is a hard case, and it's a hard case for three reasons. One of the major ones is that an undercover officer of the Puerto Rico Police Department was murdered in an execution-style murder. One shot, back of the head, and it's difficult for that reason. Another reason is that it is very clear that defense counsel worked very hard on this case. It was a death-eligible case, and the death penalty was not imposed. This comes before the court, though, on a 2255 petition, and a 2255 petition actually you have to show on ineffective assistance of counsel, you have to show that the counsel missed something that was available, that reasonable counsel should have noted and raised in a timely manner, but did not, and the failure to do so is not tied to any tactical type of decision, and that... Don't we need to find that no reasonable counsel would have done this? Or failed to do it. Right. And so that that is a reasonableness factor. Counsel, can you, maybe I'm missing something in the record here. Very often, not always, for sure, but often there will be, there would have been an evidentiary hearing where there would have been some exploration of the performance of counsel, why counsel did and did not do things. My understanding is we don't have anything like that here. Is that correct? That is correct, but you also have a record... Thank you, but may I ask why was there, I mean, sometimes in these cases there has been a request for an evidentiary hearing that's been denied, and that's raised as one of the We don't have that kind of legal issue in this case. Is that correct? You did not grant a certificate of appealability on that issue. There was a request for an evidentiary hearing. In order to have an evidentiary hearing, counsel would have been appointed to represent Mr. Casey at the district court level. No such without an evidentiary hearing because the government advocated in its response to the 2255 that the case could be decided on the record without an evidentiary hearing. Okay, that's helpful. Thank you. Counsel, can I turn to the central issue, the presentment issue in this case? Yes, ma'am. Can I ask you why wasn't it reasonable for the government to delay presentment when it Casey's residence, his grandfather's home that morning, and it needed to do that as soon as possible in the hopes of finding out Officer Lizardi's location, his whereabouts in case he was still alive? Why are those reasons not strong enough to delay presentment? Presentment is a uniquely procedural rule, and it has been a procedural rule in McNab, I believe that they pointed to as early as the 1870s where it was statutorily mandated that officers bring accused people who have been detained in front of a judicial officer in order to have all of the legal protections of those proceedings apply to that person before anything else happens, really. What that procedure means is that one should probably look to procedural reasons why that presentment did not occur. And I say that because there are always investigative actions that can be happening that would excuse the presentment to the magistrate judge. And so if you rely on factors other than procedural factors to say, well, we were busy doing this and we were busy doing that, officers are busy people. Counsel, when you say procedural factors, are you suggesting that the only legitimate reasons for delay would be transportation problems or the unavailability of a magistrate? You seem to be arguing for that proposition, but that's not where the law is in this presentment area. Isn't that correct? Actually I am arguing for something that is a little bit broader than that. And it was something that was noted in Galindo Serrano by this court, and that was that when you have sufficient personnel, and so it is a type of a triage idea of what can we get done and how much personnel do we have to do it, so that if you had five officers who had to be there in order to perform the search warrant in a legitimate and thorough reason, and you didn't have any other personnel to be doing anything else at the time, a court could look at that and say procedurally, this was of the essence, and it is something that would forgive transporting a defendant to a magistrate judge. That's not what happened here. Can I just follow up? Because the case law I think is pretty clear that needing time to conduct a search to safeguard evidence can be a basis for delaying, but what you're Mr. Casey to the magistrate judge, that precedent shouldn't be dispositive. Is that your argument? That is my argument. And so it is just the availability of manpower, and in this case there was a lot of manpower that was devoted to this case from the initiation of the case by 6 o'clock in the morning, and Mr. Casey had been arrested at basically 1130 midnight the day before. There was enough activity by the United States Attorney, by the FBI, and enough federal involvement to actually get the case and the jurisdiction transferred to the FBI by that time in the morning. If everything you've said so far were correct, you're still going to eventually run into the Strickland requirement of establishing prejudice. Correct. And you might want to direct some of your attention, because the record did seem to have quite, shall we say, very strong evidence of guilt in terms of the blood found on him, the weapon, the fact that they were together right before the officer disappeared. It appeared rather overwhelming. It was one of those issues where the government's case established that Casey was present at the time that Lizardi was killed, and that was never disputed in this case. Present as in having the officer's blood on his foot. Yes. So whether he helped transport Officer Lizardi's body, afterwards helped put it into the back seat, the issue was, was there another person, namely Hernandez, who got into the back seat of that truck unexpectedly, and not according to plan, and then shot Lizardi in the back of the head. And then your client ended up with the gun hidden at his grandfather's house. And then the gun and the truck all went to the grandfather's house. He left that there at the grandfather's house. But that doesn't establish that there wasn't that person who was behind, who shot Lizardi, and whether, and there's no evidence, zero, nothing, saying that. But there was, this alternative suspect theory was explored at trial, and my understanding is that an FBI agent testified to the fact that there was no significant evidence implicating Hernandez in this crime. So that issue was addressed, and obviously got nowhere. Isn't that true? No, Your Honor. And the reason it is not true is because you will have no evidence if you look for no evidence. And so that the whole problem... Did an FBI agent testify to this argument? The argument was being raised that there was an alternative suspect. There was, and so this is just it. But there was also evidence that the FBI had DNA, they had certain things. They had a hair in the back of the truck exactly where the defense said that Hernandez was when he shot Lizardi. There was the backpack that contained personal items that were not Lizardi's that was recovered that did not come back with Casey's DNA. They did the DNA tests, and so all of those DNA tests could have established that Hernandez was in the back seat, that Hernandez had that backpack, that Hernandez was involved, and yet they didn't do the DNA analysis on that. And their excuse for that was that they could not get a sample from Hernandez, and I find that jaw-droppingly amazing. But it doesn't matter who pulled the trigger. I mean, the government argues that your client could be equally culpable as an aider and a better. So the notion that it really matters who pulled the trigger seems to me to be inaccurate as a legal proposition. He, one, could not be tried as an aider and a better because you have to have specific intent in order to be able to promote that particular crime. And so that aiding and abetting isn't just, you know, I happen to be there and this happened. It has to be that I did something in order to assist in this particular crime. And they didn't have that evidence. And because they didn't have that evidence, they actively asked that an aiding and abetting instruction not be given to the jury, and it was not given to the jury. Counsel, in your view, did the United States use the challenge statements to prove a disputed element of the offense of which your client was convicted? That is exactly right. And it is clear from closing argument that that is exactly what they did. Can you elaborate? It is when they have the confession and they repeatedly refer to that confession in closing argument as to saying, well, they are pointing to this third party Hernandez as having, but that's not what he says at SEBA. He says, I am sunk with this evidence. And then after, in rebuttal closing arguments, they again say, they have attacked this case left and right, but the one thing that they cannot attack are his statements at SEBA. And that he admitted and that he said that he was sunk with the evidence and that he knew where the body was and that he is the one who is guilty of this crime. And so this is just it. If you take out that portion of the government's argument and you take out that portion of the government's case, you do not have sufficient evidence to convict Casey of those two crimes that carried the life sentences. But Counsel, he, subsequent to those statements to the officers, he made statements to his wife about three hours later, right, that are equally inculpatory, maybe even more inculpatory. And those were not subject to suppression. Were those statements also used at the trial? They were. Okay. And there was a separate motion to suppress those particular statements, the overheard statements. There was not a really good legal basis for doing so. It was based on a Miranda violation, which in Miranda that would not have applied because it was not police interrogation. And they could have raised a Rule 5 because Rule 5 and a 3501 specifically state that it is interrogation by anyone. These were not just volunteered statements. And it was not three and a half or three hours after interrogation. It might have been a half an hour after the police interrogation had occurred that he made these statements to his wife. And it appears that his wife was brought to SABA from Luquillo, that she had already seen him at Luquillo, and that then this was basically another effort to have him discuss the case. But we can't disregard the testimony was admitted. It's not within the Certificate of Appeal that we should ignore that testimony. Excuse me. I just didn't hear. Sure. The testimony of what he said to the wife was admitted. Yes, it was. And the propriety of that admission is not now before us. Yes, it is. How is that? It was part of the Certificate of Appeal ability that was granted by the State. But how is that wrapped up with the Strickland issue? It is what that they appealed. In other words, as a fruit of the... It's still a Rule 5 violation. It's still a presentment issue. Because of the timing where it occurred? The timing when it occurred, yes. And it also falls within the rule and the statute. So 3501... So that 4 o'clock, that was the day before the presentment rather than the day... Yes, it was. August 1st was when he was arrested near midnight. August 2nd was when he was... I think I have these... Then August 3rd was the presentment. And then August 3rd was the presentment. Counsel, can I just ask you one more question? Yes, ma'am. You argued at page 8 of your brief that Mr. Casey didn't make the first set of inculpatory statements until 3.30 p.m. on August 2nd? Correct. Do you have an actual record cite for that? I didn't see it in your brief, and I'm just wondering if... And you can tell us on rebuttal. I can get that to you also on a 28J. I may not have that, but my recollection is that Officer Morero, who was the interrogator, kept fairly accurate notes as to when things happened, and so that there were testimony at the suppression hearing where that would have been part of the record. If there's nothing else. Thank you, counsel. At this time, would Counsel for the United States please introduce himself on the record to begin? Good morning, Your Honor, and may it please the Court. Ricardo Inbert Fernandez for the United States. Casey's trial counsels were not ineffective for not seeking to suppress the statements at issue on prompt presentment grounds. I'll start with the deficiency prong, if that's okay with the Court. The statements at issue – well, sorry, let me backtrack a little bit. Any motion by Casey's trial counsels to suppress the statements at issue would not have been meritorious because those statements fall within 3501's six-hour safe harbor window. Casey was taken into federal custody at 12.45 p.m. on August 2nd, and the statements were all made before 6.45 p.m. on August 2nd. Counsel, the trial judge found the contrary about that. I mean, what I find myself asking is it seems to me, if nothing else, the briefing and the argument we've already had establishes there are some real issues here under this presentment doctrine. So why wouldn't it? Why wouldn't an attorney raise the issue? What possible reason could there be not to do it? We don't know why because we don't have a record that establishes that. But given the number of issues, and I think there are serious issues here, why wouldn't an attorney, given all that's at stake here, why wouldn't a reasonable attorney raise this issue? There were other suppression issues raised. There's nothing frivolous about the arguments that are being made here. Why wouldn't a reasonable attorney, given all that's at stake here, raise this issue as well? Well, first, Your Honor, I'd like to push back, if I may, on your categorization of the district court's order saying that the court found that the safe harbor window. Well, she said the safe harbor doesn't apply. Well, the court actually, in my reading of the order, bypassed that holding and went straight to the McNabb-Mallory portion of the inquiry where the court just analyzed whether any delay was justifiable. And we know that particularly because the court started running the clock at 1130 on August 1st, way before Casey was in federal custody or federal authorities were involved at all in this case. So that was clearly wrong under the framework that applies to 3501 and Rule 5 motions in which the safe harbor window starts ticking when a defendant is in federal custody. And by federal custody, the cases mean that he's being held on federal charges. Counsel, can I actually ask you about that very specific issue? Yes, Your Honor. You have talked about custody, and I'm trying to understand why custody is relevant rather than when the U.S. assumed jurisdiction, which was at 6 a.m. on August 2nd. And Alvarez-Sanchez, which I think is the critical case on this, says very, and I believe I'm quoting here, that the clock starts to run when a person is detained for a federal crime, regardless of whether a state or a federal official is the one doing the detaining. So when the FBI assumed jurisdiction at 6 a.m. on August 2nd, what was Casey being detained for at that point, if not a federal crime? Your Honor, he was taken into custody on August 1st on state charges or state probable cause, and he continued to be held on state probable cause until 1245 or around noon the next day. The reason we know that, Your Honor, is there's actually various reasons we know that. I'll start off with the fact that the complaint on which Casey was arraigned on August 3rd in the morning charged Casey with being a felon in possession of a firearm. That was the charge on which he was taken into custody. That charge, there was also a minor drug charge of, I think it was one-fourth of a pound of marijuana that was found in the room as well. But that charge wasn't available until around noon when federal agents searched Casey's room in his grandfather's house and they found the weapon. Before that point, there was no way that the federal authorities could hold him on any federal charges because there were no charges to begin with. We also know, Your Honor, and we get this from Agent Moliere's trial testimony, that's docket 937, pages 36 to 38. We also get from there that the FBI arrived at Canoanas in the morning at the Canoanas Police Department, and they didn't really know what was going on, Your Honor. Agent Moliere testifies directly as to that. Their involvement prior to noon in this case was simply assisting state authorities in an emergency situation of locating a missing undercover agent who was known to be wounded but thought to still be alive. They were just figuring out, they had no basis on which to hold him on federal charges. And that's, if I may, Your Honor, make an additional point, I apologize. That's also supported by Puerto Rico Police Department Agent Diana Marrero's testimony at the suppression hearing in which she says that the FBI arrived at Canoanas at 6.40 a.m. on August 2nd, and that's when they were apprised or briefed of the situation. They didn't know what was going on before that. How could they have custody on federal charges when there was no basis for the federal authorities to know if there had been any federal violation of law yet? But, Counsel, I think it's uncontested that the FBI assumed jurisdiction at 6 a.m. on August 2nd, correct? Your Honor, assumed jurisdiction in this case merely means that the FBI assumed an investigatory jurisdiction. It doesn't transfer over to the detainment or even jurisdiction over a prosecution. That didn't happen until afternoon when the U.S. Attorney's Office, in conjunction with the FBI, decided to actually take jurisdiction of the case. So the FBI can assume jurisdiction of a case even if it has no idea who in the world is the culprit? Well, Your Honor, that's the thing. There is a reported kidnapping of a congressional staffer, and the FBI can assume jurisdiction of that even though they don't know who did the kidnapping. It's important to point out in this case that Are you agreeing or disagreeing? No, Your Honor. I am trying to place the phrase assumed jurisdiction in context because otherwise I can't answer your question. In other words, you can't say, can the FBI assume jurisdiction of a case even if it doesn't know who the culprit is? It can begin investigating, which is what it did here, Your Honor. And is that assuming jurisdiction? If it knows there's a federal offense but it doesn't know who did it, can it assume jurisdiction? Well, Your Honor, in this case, the FBI didn't know that a federal offense had been committed. I'm just trying to clarify whether the FBI, if it knows there's a federal offense and a victim, can it assume jurisdiction even though it doesn't know who the culprit is? Doesn't the FBI do that all the time? Yes, Your Honor, but that doesn't mean that there's not going to be federal custody at that point. I think the issue, though, is again, the case doesn't talk about custody. It talks about when they're detained for a federal crime regardless of in whose custody the defendant is. And so I guess, again, the question I have for you, and I appreciate you referring to Agent Moliere's testimony because I took a look at that, and he testifies that when the FBI assumed jurisdiction, they assumed jurisdiction after he spoke with the AUSA and that at that point he was running the investigation, which is why the Puerto Rico police officers waited for the FBI to arrive to conduct the search at the house. So I think, again, the question for me is if they assumed jurisdiction at 6 a.m., how could he be detained for anything other than a federal crime at that point? That's just what I'm trying to figure out. Your Honor, if I may address something that you mentioned in your question. The moment in time where Agent Moliere points to in that testimony as the U.S. Attorney's Office in conjunction with the FBI making the decision to take jurisdiction is if I'm remembering correctly, and I'm pretty sure that I am, is afternoon because he testifies that he wasn't assigned the case until afternoon and that it was thereafter, something along those lines is what he says, that the FBI in conjunction with the U.S. Attorney's Office decides to actually take jurisdiction. I think we're getting, or maybe I'm not being clear or not getting the point across, with the issue of that phrase assumed jurisdiction in this case. Excuse me. It seems to me you're, respectfully, I think you're missing the point of this colleague. What you're demonstrating is that there is a lot of legal uncertainty about when the clock starts to run. We're talking, the only issue here is whether it was patently unreasonable for defense counsel not to raise these presentment issues as a basis for suppression. The very colic we were having suggests there are serious legal issues here. If that clock started to run at 6 a.m., there's a strong argument that these statements that were so important to the prosecution and trial that they referred to, I guess, in closing argument, those statements should have been suppressed. So why wouldn't a reasonable attorney, given all of this legal uncertainty, why wouldn't a reasonable attorney as part of the suppression effort raise this presentment issue? Your Honor, I believe the standard is actually that Casey would have to show that the motion would have been successful, not merely that a counsel would have made it. He has to show that. To show prejudice, he's got to show that it would have made a difference. Well, that's true, Your Honor, and I can move on to prejudice if the Court would like this. In this case, there is absolutely no prejudice. Isn't that why he needs to show he would have won? Because if he raised it and lost, it wouldn't have made any difference. So there was no prejudice by not raising it. Your Honor, I'm sorry, can you repeat the question? I'll withdraw the question. Okay. I apologize. Your Honor, if I may address the prejudice prong of the inquiry at this point. My colleague argues that these statements were sort of the silver bullet in the government's case trial that somehow proved that he had been the shooter or that his accomplice or accomplice after the fact theory was unavailing. If you look at the statements at issue, they are not probative as to any of that at all. These statements at most prove that, well, Sean Casey knew what had happened to Agent Lissardi, which my colleague said here that they do not contest, and they also prove that he knew where the body was, which is also consistent with the concessions made by Casey. And the other statement, the I'm sunk with the evidence statement, really says nothing at all. It's just a recognition of the strength of the government's case, which is an objective fact that the jury could tell from itself. In this case, the government had the gun that was found in Casey's bedroom. They had the bullet that the ballistics of the bullet that was found at the Marina where the shooting took place matched the gun found in Casey's bedroom. They had in Casey's bedroom as well sandals with blood that matched Lissardi's DNA. They had Lissardi's cell phone. They had him driving the car. We had evidence that he had been driving the car. He was arrested while in possession of the car. The car was filled with blood all over the passenger seat and the back cabin. There was testimony of Lissardi going to the Marina with Casey in the morning of the crime and then leaving the parking lot by himself, paying hurriedly with a $20 bill to get out, and the $20 bill had blood on it that also matched Lissardi's DNA. Counsel, if I may, you are correct about all of that evidence and we're familiar with all of the evidence that was presented. But I think the question I have for you is when I read the closing argument, the transcript of the closing argument made by the United States, both the initial and the rebuttal, I counted eight times that the challenge statements were referred to during the closing argument, which was not that lengthy. So I guess the question I have for you is if the statements, the challenge statements, were not critical to the case put on by the government, why did the government refer to them eight times during the closings? Well, Your Honor, I'm not at all trying to imply that it wasn't relevant evidence. It was relevant evidence and it was admitted. It was simply not provative of the elements that my colleague says are deficient absent those statements. That is simply not true. And everything you get from those statements you also get from better evidence that was also in the record that was also referred to extensively at the closing arguments, Your Honor. If I may. The fact that a counsel refers to evidence at closing argument when all the evidence is referred to extensively does not mean that the jury would have reached a different verdict had that, had those statements not been introduced into evidence in this case or had been suppressed under prompt resentment grounds. So I submit to this court that there is no prejudice that Casey can prove in this case on the strength of the evidence against him and also weighing the probative value of these statements and not their value but what they go to prove. What they go to prove is something that is proven many times over by all the evidence in this case, Your Honor. Counsel, I have another question for you about the aiding and abetting theory that you put forward in your brief. Yes, Your Honor. And, you know, I guess the question I have is, again, I read the transcript and the trial judge specifically asked the parties whether they wanted that instruction and the United States specifically agreed not to have it given. So I guess the question I have for you is how could Mr. Casey have been convicted on a charge that the government never pursued at the trial and was never presented to the jury? How can that be? Well, Your Honor, the government chose not to present an aiding and abetting instruction to the jury because it would have been confusing in this case where all the evidence pointed to him being a principal. Had these statements not been at issue, I think the government might have, well, no, I think it wouldn't have mattered. But that doesn't mean that the government, if this case was, as it happened at trial, as trial went, went, developed, it became apparent that an aiding and abetting instruction was not necessary and would have been confusing to the jury. That is not to say that the government could not have convicted LaShawn Casey on an aiding and abetting theory, which is implicit to any charge, and the fact that an instruction was not sought out does not change that. But, Counsel, you can't, just to follow up my colleague's question, you do, in arguing there was no prejudice here, you say, well, he could also have been convicted as an aider and abetter. How can you invoke that possibility in arguing against prejudice when, in fact, the government specifically chose not to pursue that theory? You can't. You just, I don't know how you can do that. Well, Your Honor, at any rate, that aiding and abetting argument is simply a fallback position. Our prejudice argument is pretty strong elsewhere. If the Court has no further questions, the government rests on its brief. Thank you. Thank you, Counsel. Counsel, for the appellant, please reintroduce yourself on the record to begin. She has a three-minute rebuttal. It's unusual to have factual determinations that are actually in favor of an appellant by the District Court. But it was the District Court's determination that jurisdiction did transfer to the federal government at 6 o'clock in the morning. And that is actually supported by the record. And it's supported by Officer Morero's statement that they waited, they got the permission from the grandfather to search the house at Canovanas, but then they waited at Canovanas and just held the place and secured the location until the FBI arrived. The FBI got its own permission to search, and the FBI ran the investigation. And that was the words out of Agent Morero's mouth was that the FBI ran this investigation. And they ran it from the time that they assumed jurisdiction. Counsel, let me, if I might, just quickly. One of the rationales offered by the District Court to justify the delay in presentment here was that the police officers were gravely concerned about what had happened to Lazar. They had reason to think that he may be gravely wounded. And I think they had 100 officers involved in trying to find out where he was. And so the court characterized this, I guess, as a public safety concern. So there was a massive amount of manpower devoted to trying to find him. And so other officers were not available. I guess that's the court's point to transport Casey to a magistrate and so forth. What's wrong with that as a rationale, as a justification for the delay? What's wrong with that is that the SABA office of the FBI was devoted to this. They were the officers who were there at the search of the grandparent's house. But also the San Juan office was also devoted to that. And they were not there at the search, or it's not apparent that they were there. Nothing says that they were there. So you have an entire office who is actually there. You have the manpower that is available, and yet you're not using it. And I would go back to McNabb. And this is just it. McNabb says, The history of liberty has largely been the history of observance of procedural safeguards, and the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law. And it's one of those places where they say the zealousness of the police in investigating cannot override procedural protections when they can comply with those. And in this case, they could have spared the officers who were sitting around with Casey, not doing anything else other than just being there with him, to take him to San Juan. There were officers in San Juan that could have processed him and gotten him to a federal magistrate. There is no evidence on this record that there was a lack of manpower, even with the efforts that were being made to find Vizardi at that time, that there was so many officers who were involved, that having the few officers that would have been required to transport him and to prepare him for presentment would not have affected that. And so that is it, is that there is a procedure. It wasn't followed. It could have been followed because of the number of officers involved in this case. What about the justification that it wasn't so much the officers that were the limited resource, but they wanted him as the last person who saw the officer? And that is exactly what Rule 5 forbids. This is just that it cannot be used as an investigative tool. But not investigative. In other words, to save someone's life. It was where he had already said by 6 o'clock in the morning that he was not cooperating anymore. And so that he already had made that statement that that was not going to be an available resource. And so by the time that the FBI assumed a jurisdiction, that avenue of investigation had been foreclosed. Any further questions? Thank you, Counsel. Thank you. Thank you, Counsel. That concludes oral argument in this matter.